IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DAN PATRICK MCCAUL,<br><br>Plaintiff,<br><br>vs.<br><br>BERT BARTLE, JENNIFER HEBER, OPPORTUNITY BANK OF AMERICA, ABC CORPORATIONS 1-5, DOES 1-5<br><br>Defendants. | CV 26-76-KSL<br><br>MEMORANDUM OPINION AND ORDER |

Before the Court is pro se Plaintiff Dan Patrick McCaul's Motion for a Temporary Restraining Order and Injunctive Relief. (Doc. 37). McCaul "seeks immediate protection from imminent, irreparable harm arising from Defendant's unlawful, retaliatory, and bad-faith conduct relating to Plaintiff's financial accounts, credit standing, and pending legal matters." (*Id.* at 2). Defendant Opportunity Bank opposes the motion, arguing that McCaul has failed to show that a temporary restraining order or injunctive relief are warranted. (Doc. 46). McCaul filed a reply to Opportunity Bank's response. (Doc. 51). Because McCaul fails to show that he is likely to suffer irreparable harm absent preliminary relief, the Court denies McCaul's motion.

## I. Relevant Background

Because the Court determines that McCaul has failed to show irreparable harm, the Court recites only the facts relevant to this inquiry. McCaul does not dispute the following chronology: in July 2021, Opportunity Bank extended McCaul and a co-borrower a home equity line of credit. (Doc. 46-1 at 5; Doc. 37 at 2). This home equity line of credit was paid off and closed in September 2024, and Opportunity Bank reported it as paid and closed in October 2024. (Doc. 46-1 at 1, 8; *see also* Doc. 37-3 at 1). Equifax and TransUnion reflected this update in November 2024, but Experian did not. (Doc. 46-1 at 13 (Equifax); *id.* at 18 (TransUnion); *id.* at 21 (Experian); *see also id.* at 2). In June 2026, McCaul notified Opportunity Bank that Experian continued to show the account as open and over its credit limit, and Opportunity Bank submitted a correction on June 16, 2026. (*Id.* at 9-12, 32-33). As of August 6, 2026, Experian reported the account as paid. (*Id.* at 2, 34).

Around the same time the home equity line of credit was paid off in September 2024, Opportunity Bank also closed McCaul's personal checking account, which was overdrawn. (Doc. 46-2 at 24, 26). Because the account was not paid within the required ten-day period, Opportunity Bank referred the account to a third-party collection agency. (*Id.* at 25, 28-29, 31). The collection agency received a payment on McCaul's behalf on October 7, 2025. (*Id.* at 2, 52-53). Following a complaint by McCaul, on August 4, 2026, Opportunity Bank updated its report of the account to

ChexSystems to reflect the account as "Paid," and it recalled the account from the collection agency. (*Id.* at 3, 15-16, 54; *see also* Doc. 46 at 7). Opportunity Bank stated that it did not report the checking account to Equifax, Experian, or TransUnion. (Doc. 46 at 7; Doc. 46-2 at 3). McCaul has offered no evidence to the contrary. McCaul filed the present motion on September 14, 2026. (Doc. 37). In support of his motion, McCaul attached two lender denial letters. (Doc. 37-1). The record contains no credit report from Equifax, Experian, or TransUnion.

## II. Legal Standard

The legal standard for a temporary restraining order is "substantially identical" to the standard for a preliminary injunction. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). In evaluating these factors, courts "must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief." *Id.* at 24 (cleaned up). Because a preliminary injunction or temporary restraining order is an "extraordinary remedy," it is never awarded as a matter of right, but only "upon a clear showing that the plaintiff is entitled to such relief." *Id.* at 22. Further,

preliminary relief is not an adjudication on the merits; rather, it is a tool to preserve the status quo and prevent the irreparable loss of rights before a final judgment. *Textile Unlimited, Inc. v. A..BMH & Co.*, 240 F.3d 781, 786 (9th Cir. 2001).

**III. Analysis**

McCaul has not demonstrated a risk of immediate, irreparable harm. Because he fails to satisfy this requirement of the *Winter* injunction test, the Court need not address the remaining elements.

To secure preliminary relief, a plaintiff must demonstrate that irreparable harm is likely, not merely possible. *Winter*, 555 U.S. at 22. The threatened injury must be real, immediate, and presently existing rather than speculative or contingent. *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988). An injury capable of monetary compensation is not irreparable because a subsequent damages award can make the plaintiff whole. *L.A. Mem'l Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1202 (9th Cir. 1980). Moreover, as a general rule, to obtain prospective injunctive relief, a plaintiff must show that the defendant's conduct allegedly violating the law is ongoing or likely to recur. *F.T.C. v. Evans Prods. Co.*, 775 F.2d 1084, 1087 (9th Cir. 1985). If a plaintiff fails to satisfy the irreparable harm requirement, a court need not consider the three other *Winter* elements. *See, e.g.*, *Avila v. NewRez LLC*, No. 2:24-CV-02264-TLN-CSK, 2024 WL 4382752, at *3 (E.D. Cal. Oct. 3, 2024); *Navajo Health Found. v. Razaghi Dev. Co.*,

*LLC*, No. 2:19-CV-00329-GMN-EJY, 2020 WL 2798014, at *4 (D. Nev. May 29, 2020); *Mohebbi v. Khazen*, No. 13-CV-03044-LHK, 2013 WL 3733050, at *3 (N.D. Cal. July 15, 2013). Although courts liberally construe pro se filings, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), pro se plaintiffs still must satisfy the *Winter* factors. *See Harris v. Muhammad*, 165 F.4th 1345, 1350 (9th Cir. 2026); *see also Funderburk v. Virginia Mason Med. Ctr.*, No. 2:25-CV-01495-JNW, 2025 WL 2958481, at *2 (W.D. Wash. Oct. 17, 2025).

McCaul asserts that "Opportunity Bank has taken, threatened, or has already taken adverse actions against Plaintiff that will and has already caused permanent and irreparable harm, including…documented and ongoing credit impairment directly caused by Opportunity Bank's 2-plus-year misreporting of the $103,800 HELOC loan payoff and the subsequent $273.12 charge-off." (Doc. 37 at 2). McCaul cites a September 10, 2026, "Valley Credit Union Denial Letter" and a September 11, 2026, "Intrepid Credit Union Denial Letter," as evidence that Opportunity Bank's conduct is hurting his credit score. (*Id.* at 2-3). Opportunity Bank responds that McCaul has failed to show that it has misreported anything, that the evidence McCaul offers suggests something else is causing his credit score issues, and that McCaul's claims are monetary and therefore not irreparable. (Doc. 46 at 12-16).

McCaul identifies numerous alleged injuries that he argues establish irreparable harm: impairment of his credit, reputational and other consequences allegedly

resulting from Opportunity Bank's "false, fraudulent, and retaliatory reporting" to state agencies such as the Adult Protective Services Division of the Montana Department of Public Health and Human Services, and the closure of business accounts belonging to two entities with which he is affiliated. (Doc. 37 at 2, 10, 13-14). These allegations each fail to show that McCaul will face irreparable harm absent preliminary relief from this Court.

**A. Credit Impairment and Financial Harm**

According to McCaul, Opportunity Bank's alleged inaccurate credit reporting has hurt his credit score, resulting in "[d]enied credit applications, increased financial vulnerability, loss of economic opportunities, and ongoing reputational damage with lenders." (*Id.* at 2, 5-6). As discussed further below, *infra Part III.C*, McCaul also alleges that Opportunity Bank's closure of the business checking accounts of 406 Expert Solutions and the Edify 501(c)(3) corporation caused "interruption of business operations, inability to process payments or conduct investigations, reputational harm to both entities and plaintiff Dan McCaul personally, loss of donor confidence for the 501(c)(3), interference with Plaintiff's ability to meet legal and contractual obligations, and increased financial instability." (*Id.* at 13-14).

The alleged harm to McCaul's credit score and resulting harms are economic harms. In the Ninth Circuit, the threat of economic harm, by itself, generally does not constitute irreparable harm warranting the issuance of an injunction. *See Idaho*

*v. Coeur d'Alene Tribe*, 794 F.3d 1039, 1046 (9th Cir. 2015); *Colorado River Indian Tribes v. Town of Parker*, 776 F.2d 846, 850-51 (9th Cir. 1985). Moreover, "[a] plaintiff is not entitled to an injunction if money damages would fairly compensate him for any wrong he may have suffered." *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 595 (1952) (Frankfurter, J., concurring); *see also Rondeau v. Mosinee Paper Corp.*, 422 U.S. 49, 60 (1975). Consistent with these ideas, district courts within the Ninth Circuit have found that harm to a plaintiff's credit score and finances constitutes economic harm that does not warrant preliminary injunctive relief. "Harms to [a] plaintiff's credit score and finances more broadly are fundamentally economic harms, unsuitable for a temporary restraining order." *Silva v. Volkswagen Grp. of Am., Inc.*, No. CV 24-06367-MWF, 2025 WL 819076, at *2 (C.D. Cal. Jan. 9, 2025); *see also Williams v. Transworld Sys. Inc.*, No. 25-CV-09527-HSG, 2025 WL 3295330, at *2 (N.D. Cal. Nov. 26, 2025); *Brinker v. JP Morgan Chase, N.A.*, No. 13-CV-01344-LHK, 2013 WL 7798675, at *3 n.1 (N.D. Cal. May 17, 2013).

McCaul's only cited authority does not support his request for temporary relief. He asserts that "[c]ourts recognize that: credit impairment, loss of access to funds, retaliatory financial actions, [and] interference with legal obligations, constitute irreparable harm." (Doc. 37 at 8). But the only authority he cites in support of that proposition, *Peterson v. Eichhorn*, 2008 MT 250, 344 Mont. 540 (*Id.* at 8-9),

did not concern credit reporting, account closures, or preliminary injunctive relief. *Peterson*, 344 Mont. at 542. Rather, that case concerned a defendant's liability for injuries caused when his horse bit the plaintiff. *Id.* As such, the case is irrelevant. McCaul provides no further authority to overcome the well-established rule that his alleged credit impairment and financial harm are not irreparable harms for purposes of preliminary relief.

Even if McCaul's alleged harms otherwise satisfied the irreparable harm requirement—and they do not—McCaul has not shown that the conduct he complains of is ongoing or likely to recur. As explained above, the record shows that Opportunity Bank last reported on the home equity line of credit in October 2024, reporting it as paid and closed. (Doc. 46-1 at 1, 8). After McCaul notified Opportunity Bank in June 2026 that Experian still showed the account open, Opportunity Bank submitted a correction shortly thereafter. (*Id.* at 9-12; 32-33). Opportunity Bank followed up—which McCaul does not dispute—and confirmed that Experian was reporting the account as paid by August 6, 2026. (*Id.* at 2, 34; Doc. 51 at 2-3). In addition, Opportunity Bank updated ChexSystems to reflect the checking account was "Paid" and then recalled the account from the collections agency in August 2026. (Doc. 46-2 at 3, 15-16, 54; *see also* Doc. 46 at 7). Only afterwards did McCaul file the present motion. And while he claims that Opportunity Bank is continuing to misreport his credit, he has not produced a credit report from Equifax, Experian, or TransUnion.

Indeed, his only exhibits (Doc. 37-1) fail to identify which accounts or furnishers produced the scores they recite. With respect to the alleged Adult Protective Services reports discussed below, McCaul himself acknowledges that the alleged reports occurred in the past. (*See* Doc. 37 at 10-12). McCaul has not shown an ongoing violation or likelihood that Opportunity Bank's alleged conduct will recur.

**B. Adult Protective Services Reporting and Reputational Harm**

McCaul also seeks an injunction against what he calls "Adult Protection Services (APS) Retaliation," based on his allegation that Opportunity Bank made "false, fraudulent, and retaliatory" reports to state agencies, including Adult Protective Services. (Doc. 37 at 10). He argues that such reporting causes "reputational injury, administrative burdens, and potential legal consequences that cannot be remedied through monetary damages alone." (*Id.* at 12).

McCaul fails to identify a concrete, non-economic injury he is likely to suffer from Opportunity Bank's past actions absent preliminary relief. His claims concerning reputational injury, administrative burdens, and potential legal consequences are conclusory. Conclusory statements that lack evidentiary support cannot establish irreparable harm. *Am. Passage Media Corp. v. Cass Commc'ns, Inc.*, 750 F.2d 1470, 1473 (9th Cir. 1985). McCaul does not explain precisely what imminent injury will result from the alleged Adult Protective Services reporting or why monetary damages would not be able to address any such injury. McCaul's general assertion that

Opportunity Bank's alleged "false, fraudulent, and retaliatory" reporting might cause reputational or administrative consequences does not establish that he is likely to face irreparable harm. As discussed above, even if the consequences of Opportunity Bank's alleged misreporting otherwise constituted irreparable harm, there is no ongoing conduct by Opportunity Bank that this Court could enjoin.

**C. Business-Account Closures**

McCaul also argues that Opportunity Bank's closure of the accounts belonging to 406 Expert Solutions and the Edify 501(c)(3) corporation caused "interruption of business operations, inability to process payments or conduct investigations, reputational harm to both entities and plaintiff Dan McCaul personally, **loss of donor confidence for the 501(c)(3)**, interference with Plaintiff's ability to meet legal and contractual obligations, and increased financial instability directly tied to Opportunity Bank's misconduct." (Doc. 37 at 13-14). But neither 406 Expert Solutions nor Edify 501(c)(3) are parties to this case, and McCaul cannot seek relief on behalf of these entities. *See Simon v. Hartford Life, Inc.*, 546 F.3d 661, 664 (9th Cir. 2008). Furthermore, McCaul provides no explanation as to why monetary damages would fail to address these injuries. McCaul's characterization of these injuries as irreparable does not make them so.

McCaul further asserts, without citation, that "[t]he Ninth Circuit and Montana courts both treat business-account closures as grounds for emergency injunctive

relief when tied to retaliation, whistleblower activity, or bad-faith conduct." (Doc. 37 at 14-15). That unsupported claim fails to establish a legal basis for preliminary relief here. McCaul does not identify—and this Court has not located—any Ninth Circuit or Montana authority applying such a rule to the type of allegations here. And, as discussed above, even if Opportunity Bank's alleged closure of the accounts belonging to 406 Expert Solutions and the Edify 501(c)(3) corporation otherwise resulted in the threat of irreparable harm to McCaul, Opportunity Bank's alleged conduct occurred in the past. McCaul's own motion likewise describes the business-account closures as completed events. (Doc. 37 at 13-14). There is no prospective conduct for this Court to enjoin.

**D. Additional Alleged Harms in Reply**

In McCaul's reply, he asserts that he faces homelessness as a result of Opportunity Bank's alleged conduct. (Doc. 51 at 15). McCaul did not allege this harm in prior briefing, and this Court "need not consider arguments raised for the first time in a reply brief." *Zamani v. Carnes*, 491 F.3d 990, 997 (9th Cir. 2007). Moreover, McCaul's allegation is conclusory; he has provided no causal link between Opportunity Bank's alleged actions and his alleged prospect of homelessness, nor has he provided any support for his claim that he faces an imminent loss of housing. Indeed, his own briefing attributes his financial strain to his fixed income. Also in his reply, McCaul alleges a further drop in his credit score. (Doc. 51 at 14). But this alleged

credit score drop is economic injury insufficient to establish irreparable harm. *Silva*, 2025 WL 819076, at *2. The additional harms McCaul alleges in his reply briefing fail to establish irreparable harm under *Winter*. And, as discussed above, McCaul has not connected this further decline to ongoing conduct by Opportunity Bank. There is no ongoing or forward-looking conduct that this Court could enjoin.

Ultimately, McCaul has not shown that he is likely to suffer irreparable harm if the court does not award him preliminary relief here. His allegations concern credit impairment, financial losses, business disruption, and other economic consequences, and he does not cite any authority demonstrating that his injuries, allegedly caused by Opportunity Bank's actions, cannot be remedied through ordinary monetary relief. McCaul has failed to establish the irreparable harm element for preliminary relief, which is fatal to his motion.

## IV. Conclusion

Because McCaul fails to show that he is likely to face irreparable harm absent preliminary relief, McCaul's Motion for a Temporary Restraining Order and Injunctive Relief (Doc. 37) is **DENIED**.

DATED this 5th day of October, 2026.

Kathleen Lane
KATHLEEN S. LANE
United States District Judge