IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| DAN PATRICK MCCAUL,<br><br>Plaintiff,<br><br>vs.<br><br>BERT BARTLE, JENNIFER HEBER, OPPORTUNITY BANK, ABC CORPORATIONS 1-5, DOES 1-5<br><br>Defendants. | CV 26-76-BU-KSL<br><br>MEMORANDUM OPINION AND ORDER |

On September 16, 2026, pro se plaintiff Dan Patrick McCaul filed a First Amended Complaint, alleging violations under the Montana Consumer Protection Act, the Fair Credit Reporting Act, the Dodd-Frank Act, the Sarbanes-Oxley Act, 18 U.S.C. §1513, and Montana retaliation and whistleblower protections. (Doc. 42). The First Amended Complaint names as defendants Bert Bartle, Jennifer Heber, Opportunity Bank, ABC Corporations 1-5, and Does 1-5. (*Id.*) On September 22, 2026, Opportunity Bank, Bartle, and Heber (whom the Court refers to collectively as "Opportunity Bank" in reference to the present motion), filed a motion to dismiss McCaul's First Amended Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 44). On September 25, 2026, McCaul filed a response to Opportunity

Bank's motion. (Doc. 50). On October 2, 2026, Opportunity Bank filed a reply. (Doc. 57). Because McCaul has failed to state any claim on which this Court can grant relief, this Court grants the pending motion to dismiss.

## I. Background

McCaul's allegations concern two tradelines that Opportunity Bank furnished to consumer reporting agencies: one for a home equity line of credit McCaul paid off in September 2024 (Part I.A), and one for a checking account charged off in the amount of $273.12 (Part I.B). McCaul alleges that he disputed both tradelines (Part I.C). He also alleges that Opportunity Bank's reporting of the checking account caused him and his businesses to lose banking relationships (Part I.D), that Opportunity Bank failed to correct either tradeline (Part I.E), and that the inaccurate reporting caused him credit, housing, and financial harm (Part I.F). McCaul further alleges that Opportunity Bank's conduct was retaliation for disclosures he made to law enforcement, regulators, and others (Part I.G). McCaul also includes allegations about an Opportunity Bank employee's prior conduct at another bank; he further alleges that Opportunity Bank gave that employee authority over his accounts, which allowed that employee's alleged misconduct to occur (Part I.H). The Court then describes McCaul's claims (Part I.I) and the procedural history (Part I.J). To the extent McCaul uses his First Amended Complaint to respond to prior briefing, the Court does not treat those responses as factual allegations. (Doc. 42 at 20-21).

**A. First Tradeline Issue: Home Equity Line of Credit**

On September 26, 2024, McCaul paid off and closed a home equity line of credit with Opportunity Bank. (Doc. 42 at 3). The balance of the home equity line of credit account at closure was $0. (*Id.*) McCaul alleges that from September 26, 2024, until June 16, 2026—the date he discovered the reporting—Opportunity Bank furnished inaccurate information about the home equity line of credit account to three consumer reporting agencies: Experian, Equifax, and TransUnion. (*Id.* at 3, 7). According to McCaul, the reporting was inaccurate in the following ways: the closed account was reported as open; the account was reported as delinquent and as carrying a $103,800 balance, which was $3,800 over the $100,000 credit limit; the reporting contained a $2,885 monthly mortgage debt-service obligation that "never existed"; and the reporting contained derogatory payment entries unsupported by any bank records. (*Id.* at 3, 7-8). McCaul alleges that these inaccuracies were reflected on the reports by at least one, "if not all three," of the consumer reporting agencies from September 2024 through June 16, 2026. (*Id.* at 8). McCaul believes that because these inaccuracies appeared simultaneously across the Experian, Equifax, and TransUnion reports, the inaccuracies stem from Opportunity Bank's furnishing, not from any individual consumer reporting agency's internal systems. (*Id.* at 3-4, 8).

### B. Second Tradeline Issue: The $273.12 Checking Account

McCaul alleges a second inaccurate tradeline regarding a checking account on which Opportunity Bank reported a $273.12 charged-off balance. According to McCaul, he paid the balance on this account in full in September 2025. (Doc. 42 at 4, 10). He further alleges that Crystal Serafin, a branch manager at Intrepid Credit Union, personally issued a cashier's check to Opportunity Bank to pay off the account. (*Id.* at 10). He alleges Bert Bartle, an employee of Opportunity Bank, received the payment, and Opportunity Bank "negotiated" the cashier's check. (*Id.* at 4, 10, 12). Despite Opportunity Bank's acceptance of the check, McCaul alleges, Opportunity Bank continued to report the checking account to Experian, Equifax, TransUnion, and Early Warning Systems[1]—an "inter-bank risk-flagging system that 'warns' other financial institutions that a consumer allegedly owes money to the reporting institution"—as charged off, past due, and in collections through August 3, 2026. (*Id.* at 4, 15).

McCaul further alleges that Opportunity Bank placed the paid account with third-party collector Rocky Mountain Solutions, also known as Credit Systems—Centron, and that an $89.10 collection fee, which McCaul attributes to Opportunity Bank, was added to the account. (Doc. 42 at 4, 13). According to McCaul, on August

[1] McCaul refers to Early Warning Services, LLC as "Early Warning Systems" throughout the First Amended Complaint. The Court adopts McCaul's use of "Early Warning Systems" throughout this opinion.

3, 2026, while he was applying for a hardship loan at Valley Federal Credit Union in Bozeman, Montana, his credit score decreased from 620 to 565 in one day due to this tradeline. (*Id.* at 13). On August 4, 2026, an attorney for Centron allegedly wrote McCaul, saying that Centron's "stance has not changed" and indicating that Opportunity Bank had requested that the account be returned, that it was not an active case at Centron anymore, and that it had never been credit reported by Centron. (*Id.* at 14). According to McCaul, Opportunity Bank's recalling of the account "constitutes evidence tampering, concealment of material information, and obstruction of justice," as well as "spoliation of evidence." (*Id.* at 15-16).

### C. McCaul Disputes Both Tradelines

McCaul alleges that he disputed the home equity line of credit reporting with Opportunity Bank on multiple occasions between October 2024 and June 2026.[2] (Doc. 42 at 7). On June 16, 2026, Opportunity Bank allegedly issued a written acknowledgement stating that "incorrect information may have been reported—by Experian." (*Id.* at 7). McCaul also alleges that Opportunity Bank's internal records show the home equity line of credit as closed with a $0 balance and that although Opportunity Bank claims it sent a correction letter to the consumer reporting agencies, it never provided McCaul with a copy. (*Id.* at 8).

[2] The Court notes that this allegation seems to contradict McCaul's assertion that he "discovered the false reporting across Experian, Equifax, and TransUnion" on June 16, 2026. (Doc. 42 at 3).

According to McCaul, Experian also directed him to send a "cease-and-desist and dispute" to Opportunity Bank. (Doc. 42 at 7). McCaul did as instructed and sent the dispute to Opportunity Bank's Loan Servicing Department and attorney, Burt Ward. (*Id.*) McCaul's First Amended Complaint lists Experian, Equifax, and TransUnion as the "recipients" of Opportunity Bank's alleged inaccurate furnishing as well as among the entities to which McCaul made "protected disclosures" as a putative "consumer whistleblower." (*Id.* at 9, 19). McCaul alleges that he made disputes repeatedly and documented proof of payment, but the First Amended Complaint never alleges to whom—other than to Opportunity Bank itself—disputes were directed, when they were made, or what they said. (*Id.* at 14). In his response to Opportunity Bank's motion to dismiss, McCaul describes the First Amended Complaint as alleging that he "submitted disputes to Experian and Equifax," "received [consumer reporting agency] instructions directing him to contact Opportunity Bank directly," and "repeatedly attempted to correct the tradelines through both the [consumer reporting agencies] and the furnisher." (Doc. 50 at 3). McCaul also alleges he gave notice to Opportunity Bank that it was reporting inaccurately on the checking account after his "disputes" of the checking account (Doc. 42 at 12), but McCaul does not allege that he disputed the checking account with any consumer reporting agency.

**D. Early Warning Systems Reporting and "Debanking"**

McCaul alleges that Opportunity Bank knowingly furnished false information about the $273.12 checking account to Early Warning Systems. (Doc. 42 at 4). McCaul also alleges that other lenders and financial institutions that accessed Early Warning Systems saw him as a high-risk customer unsuitable for opening checking accounts, deposit accounts, or loan products as a result of Opportunity Bank's allegedly "retaliatory" reporting to Early Warning Systems. (*Id.* at 5). According to McCaul, Opportunity Bank's allegedly "retaliatory" reporting caused him and his two unnamed businesses to be "debanked" by Opportunity Bank and by Stockman Bank. (*Id.*)

**E. Opportunity Bank's Alleged Failure to Correct**

McCaul alleges that on two occasions, Opportunity Bank "affirmatively represented to Plaintiff McCaul that it would provide written explanation and documentation confirming that each instance of false and fraudulent credit reporting had been corrected and that [McCaul's] credit rating had been restored." (Doc. 42 at 13). According to McCaul, as of August 19, 2026, Opportunity Bank had failed to provide any such documentation or any correction letters to any consumer reporting agency or Early Warning Systems and has refused to correct either error. (*Id.* at 13-14).

### F. McCaul's Alleged Harms

McCaul alleges that the two tradelines discussed in Parts I.A and I.B, *supra*, caused his credit score to decrease from 640 to 430. (Doc. 42 at 5). He alleges that he was denied credit by Valley Federal Credit Union, Stockman Bank, Sky Credit Union, Intrepid Federal Credit Union, Opportunity Bank itself, and other lenders. (*Id.* at 17). Although McCaul frames these denials as occurring between October 2024 and June 2026, he dates the Valley Federal Credit Union denial August 3, 2026. (*Id.*) The stated reasons for these denials included the following: derogatory home equity line of credit reporting, over-the-limit utilization, high-risk credit profile, and charged-off accounts. (*Id.* at 17-18). McCaul alleges that he has been denied housing or required to pay a $2,600 surety bond or $2,670 deposit by Icon Community at Northwest Crossing and a private landlord in Bozeman, Montana, for cited reasons including a derogatory credit report, an open delinquent home equity line of credit account, and charged-off checking accounts. (*Id.* at 18). The drop in McCaul's credit score allegedly forced him to obtain $278,550 in emergency loans from several individuals as well as from "additional small-dollar lenders," at interest rates as high as 249.9%. (*Id.* at 18-19).

### G. Alleged Protected Disclosures and Retaliation

McCaul alleges that he made "protected disclosures" to the Federal Bureau of Investigation; Adult Protective Services; local law enforcement; state banking

regulators; County Attorney Audrey Cromwell; Jack Veil, Assistant to County Attorney Cromwell; federal consumer-protection authorities; Experian, Equifax, and TransUnion; and Opportunity Bank personnel. (Doc. 42 at 19). Read liberally, the disclosures appear to relate to McCaul's criminal complaints concerning Jenica Held, *see* Part I.H, *infra*, but the First Amended Complaint does not say so expressly, and it does not allege when any disclosure was made or to what it related. The First Amended Complaint alleges that Opportunity Bank retaliated against McCaul by furnishing false home equity line of credit data, refusing to correct reporting, interfering with McCaul's credit and housing, mischaracterizing McCaul's litigation history, attempting to influence judicial perception, and filing false and fraudulent reports to Montana state agencies. (*Id.* at 20). McCaul characterizes himself as a "non-employee" and "consumer" whistleblower; he does not allege that he was ever employed by Opportunity Bank. (*Id.* at 6, 19).

**H. The Held/Wells Fargo Allegations**

McCaul also alleges that Bert Bartle and Jennifer Heber, who McCaul calls Opportunity Bank vice presidents, knew that Jenica Held, Opportunity Bank's Butte branch manager, was the subject of a Butte-Silver Bow police investigation. (Doc. 42 at 2). According to McCaul, Held was his personal banker at a Wells Fargo branch located in Butte, Montana, from 2010 to 2015. (*Id.*) McCaul alleges that Held took $58,000 from his accounts and opened at least 16 unauthorized checking accounts,

savings accounts, debit cards, and credit cards in the names of McCaul, his former spouse, his deceased son, and his businesses, without McCaul's knowledge or consent. (*Id.* at 2-3). McCaul alleges that even though Opportunity Bank knew all of this, "Opportunity Bank placed Ms. Held in a position of authority over [his] accounts, enabling the misconduct that followed." (*Id.* at 3). The First Amended Complaint does not name Held as a defendant or elaborate on any specific misconduct on the part of Held as an employee of Opportunity Bank. McCaul further alleges that Bartle and Heber knew that "Wells Fargo Bank's Fraud and Identity Theft Department Supervisors had directed Plaintiff McCaul to file felony criminal complaints" against Held. (*Id.* at 2). The First Amended Complaint contains no allegations against ABC Corporations 1-5 or Doe Defendants.

## I. McCaul's Claims

The First Amended Complaint contains three "causes of action" and five stated "claims for relief." (Doc. 42 at 2-4, 21-22). To ensure the Court thoroughly addresses each of McCaul's claims, the Court construes McCaul's First Amended Complaint as including eight independent claims:

1. First Cause of Action
2. Second Cause of Action
3. Third Cause of Action

4. First Claim for Relief: Montana Consumer Protection Act, Mont. Code Ann. §30-14-103
5. Second Claim for Relief: Furnisher Liability, 15 U.S.C. §1681s-2(b)
6. Third Claim for Relief: Failure to Reinvestigate, 15 U.S.C. §1681i
7. Fourth Claim for Relief: Federal Retaliation under Dodd-Frank, Sarbanes-Oxley, and 18 U.S.C. §1513
8. Fifth Claim for Relief: "Montana Retaliation & Whistleblower Protections," Mont. Code Ann. §§39-2-901 et seq.

**J. Procedural History**

McCaul filed his initial complaint in the Montana Eighteenth Judicial District Court, Gallatin County, on July 1, 2026. (Doc. 4). Defendants filed a notice of removal on July 30, 2026, based on federal question jurisdiction. (Doc. 1). On July 31, 2026, defendants filed a motion to dismiss McCaul's initial complaint (Doc. 5), which was mooted by this Court's order granting McCaul leave to amend his initial complaint on September 16, 2026. (Doc. 40). McCaul filed his First Amended Complaint on September 16, 2026. (Doc. 42). Opportunity Bank filed a motion to dismiss McCaul's First Amended Complaint on September 22, 2026. (Doc. 44). McCaul filed a response to Opportunity Bank's motion on September 25, 2026. (Doc. 50). Opportunity Bank filed a reply on October 2, 2026. (Doc. 57). Opportunity Bank's motion to dismiss is now fully briefed and ripe for ruling.

## II. Jurisdiction and Parties

### A. Jurisdiction

Opportunity Bank removed this case under 28 U.S.C. §1441(a) based on federal-question jurisdiction. (Doc. 1). The Court has original jurisdiction over McCaul's federal claims: his Second, Third, and Fourth Claims for Relief. 28 U.S.C. §1331. The rest of McCaul's claims are state law claims under Montana law: the First and Fifth Claims for Relief, as well as the state law theories the Court construes as part of his "Causes of Action." All of McCaul's claims arise from "the same case or controversy," so the Court has supplemental jurisdiction over them. 28 U.S.C. §1367(a). Because the Court dismisses every federal claim, it could decline supplemental jurisdiction. A district court's decision to do so is "purely discretionary." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); 28 U.S.C. §1367(c)(3). Here, the Court exercises supplemental jurisdiction over McCaul's state-law claims because the First Claim for Relief implicates Fair Credit Reporting Act preemption, which inherently involves federal law, and the Fifth Claim for Relief fails to state a claim on a plain reading of Montana's Wrongful Discharge from Employment Act. Judicial economy also supports exercising supplemental jurisdiction because the state claims turn on the same factual allegations, are fully briefed, and raise no novel or complex question of Montana law. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966).

**B. Parties**

The caption of McCaul's First Amended Complaint lists Bert Bartle, Jennifer Heber, Opportunity Bank, "ABC Corporations 1-5," and "Does 1-5," but the "Parties" section of that document names only Opportunity Bank as a defendant. (Doc. 42 at 1, 6). McCaul directs no claim for relief at Bartle or Heber in their individual capacities. Federal Rule of Civil Procedure 8(a)(2) requires facts showing that each defendant is liable for the misconduct alleged against him. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Because McCaul does not actually allege that Bartle or Heber are liable for any of his allegations, as discussed in Parts IV.A and IV.G, *infra*, the Court dismisses all of McCaul's claims to the extent they could be construed to constitute claims against Bartle or Heber in their individual capacities. Furthermore, because McCaul does not plead any facts that identify or reference the putative defendants "ABC Corporations 1-5" or "Does 1-5," the Court dismisses any claims against these parties for the same reason.

## III. Legal Standard

A party may challenge the legal sufficiency of a complaint by moving to dismiss for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive such a motion, the "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. A claim is plausible when the facts pled permit a reasonable

inference of liability on the part of the defendant. *Id.* Although detailed factual allegations are unnecessary, the complaint must offer more than bare legal conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Court need not accept legal conclusions, as opposed to factual assertions, as true for the purpose of resolving a motion to dismiss. *Iqbal*, 556 U.S. at 678. A court can, however, consider documents incorporated by reference without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003).

In evaluating a Rule 12(b)(6) motion, courts accept well-pleaded factual allegations as true and construe them in the light most favorable to the non-movant. *Autotel v. Nev. Bell Tel. Co.*, 697 F.3d 846, 850 (9th Cir. 2012). "Dismissal…is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008).

"[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (cleaned up). In the motion to dismiss context, courts likewise "construe *pro se* filings liberally" and afford pro se litigants "the benefit of any doubt." *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (cleaned up). At the same time, "*pro se* litigants in the ordinary civil case should not be treated more favorably

than parties with attorneys of record." *Jacobsen v. Filler*, 790 F.2d 1362, 1364 (9th Cir. 1986). Thus, pro se litigants must follow the same rules of procedure as litigants who are represented by counsel. *Ghazali v. Moran*, 46 F.3d 52, 54 (9th Cir. 1995). In line with the idea that there are limits to how liberally a court can construe a pro se plaintiff's complaint, a court cannot do the work of pleading for the plaintiff. *Pliler v. Ford*, 542 U.S. 225, 231 (2004). The Court cannot supply essential elements of the claim that the plaintiff did not plead initially. *Pena v. Gardner*, 976 F.2d 469, 471-72 (9th Cir. 1992).

A court must give a pro se plaintiff leave to amend unless amendment would not cure a complaint's deficiencies. *Lopez v. Smith*, 203 F.3d 1122, 1127-31 (9th Cir. 2000) (en banc); *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012). A court can deny leave to amend, however, when amendment would be futile. *James v. Giles*, 221 F.3d 1074, 1077 (9th Cir. 2000). Courts cannot consider facts that a plaintiff raises for the first time in opposition papers in deciding the merits of the 12(b)(6) claim. *Schneider v. California Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998). But the Court can consider such facts when deciding whether to dismiss claims with or without prejudice and whether to grant leave to amend. *Orion Tire Corp. v. Goodyear Tire & Rubber Co.*, 268 F.3d 1133, 1137-38 (9th Cir. 2001). Moreover, a court has especially wide latitude to deny a plaintiff the opportunity to amend when the plaintiff has already amended. *Chodos v. West Publ'g*, 292 F.3d

992, 1003 (9th Cir. 2002); *see also Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1161 (9th Cir. 1989); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 538 (9th Cir. 1989).

## IV. Analysis

McCaul's First Amended Complaint pleads three "causes of action" and five "claims for relief." The Court first discusses each "cause of action," and then discusses each "claim for relief."

### A. First Cause of Action

McCaul's first cause of action asserts that Opportunity Bank's Executive Officers, Vice President Bert Bartle and Vice President Jennifer Heber, each knew that Jenica Held, the manager of their Butte, Montana branch, "was a subject and active target of a criminal investigation…conducted by the Butte-Silver Bow Police Department." (Doc. 42 at 2). McCaul alleges that at the time of the underlying misconduct, Held was McCaul's personal banker at Wells Fargo Bank's Butte, Montana branch. (*Id.*) McCaul further alleges that "Bartle and Heber also knew that Wells Fargo Bank's Fraud and Identity Theft Department Supervisors had directed Plaintiff McCaul to file felony criminal complaints for Fraud, Actual Fraud, Identity Theft, Identity Misuse, and Embezzlement after discovering that Ms. Held had unlawfully removed $58,000 from Plaintiff's accounts and had opened at least sixteen (16) unauthorized checking accounts, savings accounts, debit cards, and credit cards

in the names of Plaintiff McCaul, his former spouse, his (*deceased son*), and his businesses – all without written consent and without Plaintiff's knowledge." (*Id.* at 2-3). McCaul claims that even though Opportunity Bank knew all this information, it put Held "in a position of authority over [McCaul's] accounts, enabling the misconduct that followed." (*Id.* at 3).

McCaul's claims here do not correspond to any count he alleges in Section V of the First Amended Complaint (Doc. 42 at 21-22), which contains McCaul's claims for relief. Nor do they state a claim on their own. Although McCaul alleges that Opportunity Bank gave Held authority over his accounts, he does not allege when that occurred, what Held did in that position, or how it relates to the two tradelines. (*Id.*) A claim must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. McCaul himself concedes that he "does NOT assert a claim against Opportunity Bank for Wells Fargo's conduct," that his allegations related to Held serve as "background context, not a standalone claim," and that he raises this narrative to show Opportunity Bank's knowledge and motive. (Doc. 50 at 7). The Court holds McCaul to that representation. To the extent the First Cause of Action could assert a standalone claim, it is dismissed. Because McCaul himself represents there is no such claim, leave to amend is unwarranted, and this claim is dismissed with prejudice.

**B. Second Cause of Action**

McCaul's Second Cause of Action alleges that Opportunity Bank inaccurately furnished home equity line of credit information. According to McCaul, he paid the home equity line of credit in full, and the account was closed on September 26, 2024. (Doc. 42 at 3). McCaul alleges that from September 26, 2024, to June 16, 2026, Opportunity Bank "repeatedly furnished false [home equity line of credit] data, including reporting the account as open, delinquent, and carrying a $103,800 balance, which was $3,800 over the $100,000 credit limit, despite the account having a $0 balance at closure." (*Id.*) According to McCaul, Opportunity Bank's alleged false reporting reflected a "fraudulent $2,885 per-month mortgage debt-service obligation that Plaintiff McCaul did not owe, did not incur, and which had no basis in any underlying account records." (*Id.*) McCaul alleges that "[t]hese inaccuracies appeared simultaneously across all three major Credit Reporting Agencies, demonstrating that the false information originated from Opportunity Bank's furnishing and not from any [credit reporting agency]'s internal systems." (*Id.* at 3-4).

McCaul's Second Cause of Action does not correspond to any particular Claim for Relief. His allegations of inaccurate furnishing serve as the factual background underlying the First, Second, and Third Claims for Relief, which the Court addresses in Parts IV.D, IV.E, and IV.F, *infra*. Opportunity Bank does not argue that the home equity line of credit information was accurate, and the Court accepts these

allegations as true. Although the First Amended Complaint characterizes the home equity line of credit reporting as "identity theft" and "identity misuse," (Doc. 42 at 5), it fails to allege that Opportunity Bank unlawfully stole or misused McCaul's identity in relation to the home equity line of credit. *See* 15 U.S.C. §1681a(q)(3). The only wrongdoing on the part of Opportunity Bank that McCaul alleges is inaccurate reporting. To the extent this "cause of action" relies on 18 U.S.C. §1028(a)(7) (Doc. 42 at 11), that statute is criminal and does not create a private right of action. *See Ellis v. City of San Diego*, 176 F.3d 1183, 1189 (9th Cir. 1999). McCaul cites no conflicting authority. Because no amendment can cure that defect, the Court dismisses with prejudice any claim under 18 U.S.C. §1028.

**C. Third Cause of Action**

McCaul makes further allegations related to "Opportunity Bank's false and fraudulent reporting of a $273.12 'charged-off' checking account, which [McCaul] paid in full in September 2025, to Experian, Equifax, TransUnion, and Early Warning Systems." (Doc. 42 at 4). McCaul alleges that a branch manager at Intrepid Credit Union issued a cashier's check to Opportunity Bank, that Bartle received the payment, and that Opportunity Bank continued to furnish the account as charged off, past due, and in collections to Experian, Equifax, and TransUnion, as well as to Early Warning Systems. (*Id.* at 4-5, 10, 12-13, 15). McCaul further alleges that Opportunity Bank "further escalated the false reporting by placing the paid account for

outside third-party collections with Rocky Mountain Solutions / Credit Systems—Centron, adding an unwarranted $89.10 collection fee." (*Id.* at 4). According to McCaul, on August 3, 2026, his credit score dropped from 620 to 565;[3] on August 4, 2026, a Centron attorney informed him that Opportunity Bank had recalled the account; and Opportunity Bank promised on two occasions—but to date has failed to provide—documentation of corrections. (*Id.* at 13-16). Construing this "cause of action" liberally, the Court sees five theories embedded in this cause of action and discusses each in turn.

**1. Reporting to Experian, Equifax, and TransUnion**

McCaul's allegations with respect to false reporting of this checking account are essentially the same as those he makes with respect to the home equity line of credit allegations. As explained in Part IV.E, *supra*, a furnisher's duties under §1681s-2(b) arise only after a consumer reporting agency notifies the furnisher of a dispute. A dispute made directly to the furnisher is not enough. *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009). These allegations fail for the same reason. McCaul alleges that Opportunity Bank continued reporting "after payment, after notice, and after [McCaul's] disputes." (Doc. 42 at 12). But nowhere does McCaul allege that he disputed the checking account with any consumer reporting agency or that any consumer reporting agency notified Opportunity Bank.

[3] Elsewhere, McCaul claims his credit score dropped from 640 to 430. (Doc. 42 at 5).

The "notice" mentioned in the First Amended Complaint is notice that McCaul gave directly to Opportunity Bank, notice that does not trigger §1681s-2(b).

**2. Reporting to Early Warning Systems**

McCaul alleges that Opportunity Bank "knowingly furnished false information to [Early Warning Systems]," which McCaul states is an "inter-bank risk-flagging system," and that when other lenders accessed Early Warning Systems, they viewed McCaul as a high-risk consumer. (Doc. 42 at 4-5). McCaul's First Amended Complaint does not expressly state whether Early Warning Systems is a consumer reporting agency, but it is one, as discussed in Part IV.D, *infra*. The Fair Credit Reporting Act's notice requirement applies in the same way, and McCaul does not allege that he disputed anything with Early Warning Systems or that Early Warning Systems notified Opportunity Bank.

Even setting the notice requirement aside, McCaul's allegations with respect to Early Warning Systems are bare, conclusory allegations that do not survive a motion to dismiss. First, the First Amended Complaint is silent as to when Opportunity Bank engaged in such reporting, how McCaul learned of the reporting, or what persons or entities accessed or used the reporting. In his First Amended Complaint, McCaul alleges the following reasons for his housing and lender denials: "derogatory [home equity line of credit] reporting," "over-the-limit utilization," a "high-risk credit profile," and "charged-off account(s)." (Doc. 42 at 17-18). None of these

reasons mention Early Warning Systems. McCaul does allege that Stockman Bank "debanked" him, but he does not allege that Stockman accessed Early Warning Systems, when it closed his accounts, or what reasons it gave. (*Id.* at 5). McCaul's assertions here consist of "conclusory allegations of law and unwarranted inferences[, which] are insufficient to defeat a motion to dismiss." *Ove v. Gwinn*, 264 F.3d 817, 821 (9th Cir. 2001). Second, the allegation that Opportunity Bank "debanked" him as a result of its own Early Warning Systems reporting does not follow. Opportunity Bank did not need to consult an inter-bank database to learn what it had itself reported.

**3. Third-party collections placement and the $89.10 fee**

McCaul alleges that Opportunity Bank placed the paid-off account with a third-party collector, Centron Services, and that Opportunity Bank subsequently added an $89.10 fee. (Doc. 42 at 4). The sole count that could cover this conduct is the First Claim for Relief; the Court discusses it in Part IV.D, *infra*. McCaul does not allege that he paid the $89.10 fee or that he suffered any other loss because of the payment. Moreover, Centron's attorney reported that the account had been recalled and had never been reported to any other party by Centron. (*Id.* at 14).

**4. Evidence tampering, spoliation, and obstruction**

McCaul describes Opportunity Bank's recall of the account from the collector as "evidence tampering," "spoliation of evidence," and "obstruction of justice."

(Doc. 42 at 14-16). Obstruction of justice is a crime; generally, violations of criminal statutes do not create private rights of action. *Allen v. Gold Country Casino*, 464 F.3d 1044, 1048 (9th Cir. 2006). Although the Montana Supreme Court has recognized the torts of negligent and intentional spoliation as independent causes of action, *Oliver v. Stimson Lumber Co.*, 993 P.2d 11, 19-22 (Mont. 1999), those torts are only viable when a third party—not a party to the litigation—is alleged to have committed the spoliation. *Peschel v. City of Missoula*, No. CV 08-79-M-RFC-JCL, 2008 WL 5131369, at *12 (D. Mont. Dec. 5, 2008), report and recommendation adopted, No. CV-08-79-M-RFC, 2009 WL 29906 (D. Mont. Jan. 5, 2009). Even if McCaul could bring such a claim, however, his First Amended Complaint fails to allege that any record was destroyed. McCaul alleges that the account was returned from Centron to the account's owner. (Doc. 42 at 14). McCaul's First Amended Complaint does not plead a count based on this theory. There is no claim. And to the extent that McCaul seeks discovery of certain documents, the Court need not consider that request at the motion to dismiss stage.

**5. Retaliation, "debanking," and failure to correct**

The First Amended Complaint alleges that Opportunity Bank engaged in "retaliatory" Early Warning Systems reporting that caused McCaul and his businesses to be "debanked" by Opportunity Bank and Stockman Bank. (Doc. 42 at 4-5). The Court addresses the retaliation theory in Parts IV.G and IV.H, *infra*. McCaul does

not cite any statute or legal doctrine where closing an account supports a claim on the facts McCaul alleges. McCaul alleges that Opportunity Bank "fail[ed] to correct after repeated promises." (*Id.* at 13-14). To the extent this allegation involves a furnisher's duty to correct and update information, that duty comes from §1681s-2(a)(2), which private litigants cannot enforce. *See* §1681s-2(d); *Gorman*, 584 F.3d at 1154. And to the extent McCaul describes the promises themselves, he cites them as evidence of knowing or reckless conduct on the part of Opportunity Bank, not as some independent contract or promissory estoppel claim. To bring a claim under promissory estoppel, McCaul would need to allege that he relied on Opportunity Bank's promises to his detriment. *S & P Brake Supply, Inc. v. STEMCO LP*, 385 P.3d 567, 576 (Mont. 2016). McCaul alleges no such detrimental reliance.

Construing McCaul's First Amended Complaint liberally, the Court concludes that none of the five theories embedded in his "Third Cause of Action" states a claim independent of the claims addressed below. Accordingly, the Court dismisses this claim with prejudice.

### D. First Claim for Relief: Montana Consumer Protection Act, Mont. Code Ann. §30-14-103

McCaul's First Claim for Relief alleges unfair or deceptive acts under the Montana Consumer Protection Act. (Doc. 42 at 21). Although McCaul's First Amended Complaint does not specifically state what Opportunity Bank did that violates this statute, the Court construes McCaul's claim to encompass three types of

conduct: (1) furnishing information to the consumer reporting agencies, (2) furnishing information to Early Warning Systems, and (3) placing the checking account with a third-party collector and adding an $89.10 fee.

The Fair Credit Reporting Act governs McCaul's claim to the extent it encompasses the furnishing of information to consumer reporting agencies. The Fair Credit Reporting Act provides that "[n]o requirement or prohibition may be imposed under the laws of any State...with respect to any subject matter regulated under...section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies." 15 U.S.C. §1681t(b)(1)(F). There are exceptions for Massachusetts and California laws, but Congress stated them explicitly and did not include the Montana Consumer Protection Act among the exceptions. *Id.* §1681t(b)(1)(F)(i)-(ii). To the extent McCaul seeks to impose liability on Opportunity Bank under the Montana Consumer Protection Act for how Opportunity Bank furnished information to the consumer reporting agencies on the home equity line of credit or on the checking account, McCaul's claim fails because it is preempted by §1681t(b)(1)(F).

McCaul responds by proposing a "temporal approach" where 15 U.S.C. §1681h(e) governs a furnisher's conduct before the credit reporting agency gets involved and §1681t(b)(1)(F) governs conduct after, which would mean that pre-notice intentional torts escape preemption. (Doc. 50 at 4-5). The Court declines to adopt

that approach. Section 1681t(b)(1)(F) preempts state law "with respect to any subject matter regulated under section 1681s-2." In turn, §1681s-2(a) regulates a furnisher's duty to accurately report at any time, even pre-notice. Because §1681s-2(a) regulates furnishing before any dispute exists, the argument that §1681s-2(a) reaches only post-notice conduct contradicts the text of the statute. Courts of appeals that have considered the temporal approach have rejected it. *See Purcell v. Bank of America*, 659 F.3d 622, 625-26 (7th Cir. 2011); *Macpherson v. JPMorgan Chase Bank*, 665 F.3d 45, 47-48 (2d Cir. 2011). But even if this Court did apply the temporal approach as McCaul suggests, his claim still fails. Section 1681h(e) bars actions "in the nature of defamation, invasion of privacy, or negligence with respect to the reporting of information" unless false information is furnished with "malice or willful intent to injure such consumer." 15 U.S.C. §1681h(e). This is a limitation on certain state-law tort actions, not a source of a new cause of action. McCaul's statutory unfair and deceptive acts claim is not an action in the nature of defamation, invasion of privacy, or negligence, so §1681h(e) does not save it. While McCaul's response brief states that the First Amended Complaint alleges "intentional torts," (Doc. 50 at 5), the First Amended Complaint does not include any tort claim, nor will the Court conjure one here. *See Ford*, 542 U.S. at 231. To the extent the First Claim for Relief encompasses the furnishing of information to consumer reporting agencies, the Fair Credit Reporting Act preempts such a claim, and the Court dismisses it with prejudice.

Preemption is also fatal to McCaul's Early Warning Systems theory. Early Warning Systems is a consumer reporting agency. The Fair Credit Reporting Act defines that term to include any entity that regularly assembles or evaluates consumer information for the purpose of furnishing consumer reports to third parties. 15 U.S.C. §1681a(f). McCaul's own description of Early Warning Systems as an "inter-bank risk-flagging system" that "warns" other financial institutions about consumers who allegedly owe money to the reporting institution (Doc. 42 at 4) describes what a consumer reporting agency does. Other sources are consistent with that conclusion. The Consumer Financial Protection Bureau lists Early Warning Services, LLC among consumer reporting companies, *Early Warning Services, LLC*, Consumer Fin. Prot. Bureau, https://www.consumerfinance.gov/consumer-tools/credit-reports-and-scores/consumer-reporting-companies/companies-list/early-warning-services-llc/ (last updated Jan. 30, 2025), and Early Warning Systems's own website characterizes the entity as a consumer reporting agency, *Consumer Report*, Early Warning, https://www.earlywarning.com/consumer-information (last visited Oct. 28, 2026).[4] Because Early Warning Systems is a consumer reporting agency, the Fair Credit Reporting Act preempts any state law claim based on Opportunity Bank's furnishing of information to it. 15 U.S.C. §1681t(b)(1)(F).

[4] The Court takes judicial notice of these websites pursuant to Federal Rule of Evidence 201(b)(2).

McCaul also fails to state a claim with respect to the third-party collections theory, which has two parts. To the extent McCaul complains that Opportunity Bank reported his account as "in collections" (Doc. 42 at 10), that is a claim that Opportunity Bank furnished his information, which the Fair Credit Reporting Act preempts for the reasons discussed above. But to the extent McCaul complains about being placed in collections or the $89.10 fee, those fall outside §1681s-2 and are not preempted. The claim fails regardless, though, because McCaul fails to allege "ascertainable loss of money or property" caused by an unlawful act or practice. Mont. Code Ann. §30-14-133(1). Regarding collections, McCaul does not allege that he paid the $89.10 fee. And to the extent he claims a drop in his credit score, McCaul has not explained how a score decline constitutes a loss of "money or property." *Id.* §30-14-133(1). In any event, the decline flows from Opportunity Bank's credit reporting, the subject of the preempted theory.

Amendment cannot fix the defects in this claim. An amended complaint can only allege facts consistent with the allegations in the prior complaint. *United States v. Corinthian Colls.*, 655 F.3d 984, 995 (9th Cir. 2011). McCaul alleges that Opportunity Bank recalled the account and that Centron never reported the account (Doc. 42 at 14). McCaul can allege no "ascertainable loss of money or property" under his third-party collections theory when he did not pay anything to either entity, and the collections agency closed the "case" and never credit reported the account. And

because Early Warning Systems is a consumer reporting agency, McCaul cannot plausibly allege facts that would overcome preemption of his Early Warning Systems theory. McCaul's First Claim for Relief is dismissed with prejudice.

**E. Second Claim for Relief: Furnisher Liability, 15 U.S.C. §1681s-2(b)**

The Fair Credit Reporting Act imposes two kinds of duties on those who furnish information to consumer reporting agencies. Under 15 U.S.C. §1681s-2(a), a furnisher must provide accurate information. Under 15 U.S.C. §1681s-2(b), a furnisher must, after receiving notice of a dispute, investigate, review all relevant information, report the results, and correct or delete inaccurate information. *Id.* §1681s-2(b)(1)(A)-(E). Subsection (b) is privately enforceable, but subsection (a) can only be enforced by designated federal and state officials. *Gorman*, 584 F.3d at 1154.

The duties pursuant to subsection (b) are triggered by a specific event: the furnisher's "receiving notice pursuant to section 1681i(a)(2) of this title of a dispute." 15 U.S.C. §1681s-2(b)(1). Under §1681i(a)(2), a consumer reporting agency that has received a consumer's dispute must notify the furnisher within five business days of receipt of notice. *Id.* §1681i(a)(2)(A). The Ninth Circuit has held that a furnisher's duties under subsection (b) "arise only after the furnisher receives notice of a dispute from a [credit reporting agency]; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)." *Gorman*, 584

F.3d at 1154. This requirement functions as a "filtering mechanism" that protects furnishers from exposure to a private lawsuit brought by any dissatisfied consumer by routing disputes through a consumer reporting agency first. *See id.* at 1154 n.9. As a result, a plaintiff must plausibly allege four facts. First, his credit report contained inaccurate information. Second, the plaintiff notified the consumer reporting agency that he disputed the reporting as inaccurate. Third, the consumer reporting agency notified the furnisher of the alleged inaccurate information. Fourth, the furnisher failed to investigate the inaccuracies or further failed to comply with the requirements set forth in 15 U.S.C. §1681s-2(b)(1)(A)-(E). *See Nelson v. Chase Manhattan Mortgage Corp.*, 282 F.3d 1057, 1059 (9th Cir. 2002).

McCaul fails to allege the third element as to both tradelines. He alleges that he disputed the home equity line of credit "with OPP Bank" on multiple occasions; that Opportunity Bank issued a written acknowledgement on June 16, 2026; that Experian "directed Plaintiff to send a cease-and-desist and dispute directly to Opportunity Bank"; and that he complied with Experian's instruction. (Doc. 42 at 7). Each of McCaul's allegations describes a dispute that McCaul personally made to Opportunity Bank or a consumer reporting agency's instruction that he do so. To the extent McCaul implies that he disputed the home equity line of credit with Experian, Experian directed McCaul to notify the furnisher (Opportunity Bank). (*Id.*). McCaul never alleges that Experian notified Opportunity Bank. (*Id.*) Nor does the First

Amended Complaint say when or how he disputed the home equity line of credit to any entity other than Opportunity Bank. As to the checking account, the First Amended Complaint alleges "notice" and "disputes," but fails to identify a particular consumer reporting agency. (*Id.* at 4, 12). Under *Gorman* and *Nelson*, a dispute made directly to the furnisher does not trigger subsection (b).

McCaul adds in his response brief that he "submitted disputes to Experian and Equifax." (Doc. 50 at 3). Even considering this assertion for purposes of leave to amend, *Orion Tire*, 268 F.3d at 1137-38, it would not cure the defect because McCaul fails to allege in either the First Amended Complaint or his response brief that Experian, Equifax, or any other consumer reporting agency notified Opportunity Bank, which is required to state a claim. Opportunity Bank's June 16, 2026 statement that "incorrect information may have been reported—by Experian" does not satisfy this requirement either. Even construing this statement in McCaul's favor, the statement merely shows that Opportunity Bank attributed the error to Experian, not that Opportunity Bank had received notice of a dispute from a consumer reporting agency.

In response, McCaul makes two arguments, both of which fail. First, McCaul argues that the Ninth Circuit "recognizes [consumer reporting agency]-initiated disputes even when the [consumer reporting agency] directs the consumer to the furnisher." (Doc. 50 at 3). McCaul fails to cite any authority in support of this

proposition, and this argument runs contrary to the statute, which requires notice under §1681i(a)(2). This provision describes the consumer reporting agency notifying the furnisher. Second, McCaul argues that whether a consumer reporting agency notified Opportunity Bank is a "fact question" that cannot be resolved on a Rule 12(b)(6) motion. (Doc. 50 at 4). Although it is true that the Court cannot resolve disputed facts on a motion to dismiss, no disputed facts are before the Court here. Opportunity Bank accepts the First Amended Complaint's well-pleaded allegations, and argues that the First Amended Complaint omits an essential element. A missing element is a pleading deficiency. *See Pena*, 976 F.2d at 471-72.

The Fair Credit Reporting Act does give consumers some ability to dispute information directly with a furnisher. *See* 15 U.S.C. §1681s-2(a)(8). Congress did not, however, make that provision privately enforceable. *See id.* §1681s-2(c)(1). McCaul's alleged direct disputes cannot support a private claim for relief.

Although ordinarily a factual omission would allow a plaintiff to amend, the Court nonetheless dismisses McCaul's Second Claim for Relief with prejudice. The consumer reporting agency-notice requirement has been before McCaul since Opportunity Bank's first motion to dismiss, and he amended in response to that motion. (Docs. 5; 6 at 11-12; 42). McCaul's First Amended Complaint does not allege any notice from a consumer reporting agency; his response to Opportunity Bank's motion to dismiss does not either. Moreover, McCaul implicitly conceded in a previous

filing that he never notified Experian, when he purported to dispute Opportunity Bank's claim that McCaul did not notify Experian by noting that the Complaint (Doc. 4) states that McCaul "notified Opportunity Bank that Experian was reporting the [home equity line of credit] as open." (Doc. 11 at 3). McCaul makes no allegation that information about the checking account was disputed with any entity other than Opportunity Bank. The First Amended Complaint argues that a consumer reporting agency's referral of a consumer to a furnisher itself constitutes notice. (Doc. 42 at 4, 12-13; Doc. 50 at 3). The Court rejects this legal theory. McCaul is the person best-positioned to know whether and when he disputed, and he has had two complaints and two response briefs but has never alleged these facts with specificity. In addition, since the motion to dismiss was filed, McCaul has filed 22 documents. Three of them repeat the conclusory assertion that he disputed the tradelines with the credit bureaus (Doc. 50 at 2-4 & 50-2 at 2; Doc. 51 at 2-3; Doc. 82 at 6-7), but none alleges when he did so, what he submitted, or any facts showing that a consumer reporting agency ever notified Opportunity Bank of a dispute. The only communications about a dispute that McCaul has described with any specificity run from him to Opportunity Bank or its counsel. (*See, e.g.*, Docs. 70-1 at 4-6; 80-1 at 6-9). Given the number of opportunities McCaul has had to assert any facts supporting his claim, and his failure to do so, dismissal with prejudice is appropriate. *See Chodos*, 292 F.3d at 1003.

**F. Third Claim for Relief: Failure to Reinvestigate, 15 U.S.C. §1681i**

Under 15 U.S.C. §1681i, a consumer reporting agency has a duty to reinvestigate disputed information. "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer…the agency shall…conduct a reasonable reinvestigation." *Id.* §1681i(a)(1)(A); *see also Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1335 (9th Cir. 1995). A furnisher's duties are governed by §1681s-2, discussed in Part IV.E, *supra*. McCaul does not allege that Opportunity Bank is a consumer reporting agency. McCaul describes Opportunity Bank as "a Montana financial institution furnishing credit information to national Credit Reporting Agencies." (Doc. 42 at 6). He could not plausibly allege otherwise. The Fair Credit Reporting Act defines a consumer reporting agency in reference to the assembling or evaluating of consumer information "for the purpose of furnishing consumer reports to third parties," 15 U.S.C. §1681a(f), and it excludes from the definition of a consumer report "any report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* §1681a(d)(2)(A)(i). Opportunity Bank's reporting of its own customers' accounts to Experian, Equifax, and TransUnion means Opportunity Bank is a furnisher, not a consumer reporting agency. Its reports are based only on its own "transactions or experiences" with the consumer. *Id.* McCaul's Third Claim for Relief fails to state a claim against

Opportunity Bank, even construing the claim as liberally as possible. Any §1681i claim would have to be brought against the consumer reporting agency or agencies. Because the defect arises from the statute and the First Amended Complaint's own description of Opportunity Bank, amendment would not fix these defects. The Court dismisses McCaul's Third Claim for Relief with prejudice.

### G. Fourth Claim for Relief: Federal Retaliation under Dodd-Frank, Sarbanes-Oxley, and 18 U.S.C. §1513

McCaul's Fourth Claim for Relief alleges retaliation under "Dodd-Frank, SOX, 18 U.S.C. §1513." (Doc. 42 at 21). McCaul's First Amended Complaint states that he brings these claims under "retaliation provisions applicable to non-employees." (*Id.* at 6). The statutes McCaul cites afford him no remedy.

The Sarbanes-Oxley Act protects an "employee" from discharge, demotion, suspension, threats, harassment, or discrimination "in the terms and conditions of employment." 18 U.S.C. §1514A(a). The elements of §1514A are linked to an employment relationship. *See Van Asdale v. Int'l Game Tech.*, 577 F.3d 989, 996 (9th Cir. 2009). The First Amended Complaint fails to allege that McCaul was ever an employee of Opportunity Bank. In fact, the First Amended Complaint describes him as a "non-employee." (Doc. 42 at 6, 19). Even if McCaul had alleged an employment relationship, he does not allege that he exhausted administrative remedies as the Sarbanes-Oxley Act requires. 18 U.S.C. §1514A(b)(1).

While the First Amended Complaint generally cites 12 U.S.C. §5301, which is the Dodd-Frank Act's definitions section and creates no cause of action, the Court construes McCaul's claim as one brought under 15 U.S.C. §78u-6(h). This provision protects a "whistleblower" from retaliation by an "employer" "in the terms and conditions of employment," and the statute defines a whistleblower as an individual who reports to the Securities and Exchange Commission. 15 U.S.C. §78u-6(a)(6), (h)(1)(A)-(B); *see also Digital Realty Tr., Inc. v. Somers*, 583 U.S. 149, 160-61 (2018). McCaul does not allege that Opportunity Bank was his employer or that he reported anything to the Securities and Exchange Commission. The list of disclosures McCaul allegedly made contained in the First Amended Complaint does not include the Securities and Exchange Commission. (Doc. 42 at 19). To the extent McCaul instead intends to invoke the whistleblower provision of the Consumer Financial Protection Act, that provision likewise protects only a "covered employee" from retaliation by an employer and requires administrative exhaustion before filing suit. 12 U.S.C. §5567. McCaul alleges neither an employment relationship nor an administrative complaint.

With respect to 18 U.S.C. §1513(e), this provision criminalizes taking harmful action, "including interference with the lawful employment or livelihood of any person," in retaliation for providing truthful information to a law enforcement officer about a federal offense. As discussed in Part IV.C.4, *supra*, a private plaintiff cannot

enforce a criminal statute unless Congress has created a private right of action. *Gold Country Casino*, 464 F.3d at 1048. Section 1513(e) does not establish any such private right of action, so McCaul cannot obtain a remedy under §1513(e).

McCaul responds that his retaliation claims "do not rely solely on employment-based statutes," (Doc. 50 at 5), but he fails to identify any other statute. The only other source the First Amended Complaint invokes, aside from "Montana consumer-protection laws," is "FCRA retaliation principles." (Doc. 42 at 20). The Fair Credit Reporting Act contains no anti-retaliation provision, and McCaul cites no authority recognizing a retaliation claim under it. Moreover, even if one of McCaul's cited statutes applied, the First Amended Complaint does not plausibly allege retaliation on the part of Opportunity Bank. McCaul lists entities to which he allegedly made "protected disclosures," but fails to explain what any disclosure said, when it was made, or how Opportunity Bank learned of it. (*Id.* at 19). He also does not allege any facts that connect any disclosure to the timing of Opportunity Bank's reporting, which began in September 2024 on the home equity line of credit and after September 2025 on the checking account. McCaul's allegations are conclusory and are insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 678. Although McCaul asserts that the Held allegations are evidence of Opportunity Bank's "motive and opportunity for retaliation" (Doc. 50 at 7), the allegations construed liberally show only that Bartle and Heber knew about an investigation into Held and that Wells Fargo

had directed McCaul to file criminal complaints. (Doc. 42 at 2). Even accepting those allegations, the First Amended Complaint alleges nothing connecting that knowledge to the credit reporting: it does not allege when Bartle or Heber learned of McCaul's complaints relative to the reporting, any statement by either suggesting a retaliatory purpose, or any act by either relating to the tradelines beyond Bartle's receipt of a payment and both being listed among the "speakers" who furnished data about his home equity line of credit. (*Id.* at 9-10).

None of these defects can be cured by amendment. McCaul does not merely fail to allege that he was an employee of Opportunity Bank; he plainly alleges that he was not one. (Doc. 42 at 6, 19). Because an amended complaint may allege only facts consistent with the challenged pleading, *Corinthian Colls.*, 655 F.3d at 995, McCaul cannot now allege that he is an employee. Without an employment relationship, neither the Sarbanes-Oxley nor the Dodd-Frank theories afford him a remedy. The Dodd-Frank theory also fails because McCaul does not allege he made any report to the Securities and Exchange Commission. 15 U.S.C. §78u-6(a)(6), (h)(1)(A)-(B); *see also Somers*, 583 U.S. at 160-61. Because §1513(e) is a criminal statute that does not authorize a private right of action, no factual allegation could state a claim under it. *Gold Country Casino*, 464 F.3d at 1048. The Court dismisses McCaul's Fourth Claim for Relief with prejudice.

**H. Fifth Claim for Relief: "Montana Retaliation & Whistleblower Protections," Montana Code Annotated §§39-2-901 et seq.**

Sections 39-2-901 through -915 of the Montana Code comprise the Wrongful Discharge from Employment Act. This law provides that a discharge is wrongful if, among other things, it was in retaliation for the employee's refusal to violate public policy or report a violation of public policy. Mont. Code Ann. §39-2-904(1)(a). The law applies to the discharge of employees and defines "discharge" as termination of employment. *See id.* §39-2-903(2). The First Amended Complaint does not allege that McCaul was ever an employee of Opportunity Bank or that he was discharged from any such employment. Rather, the First Amended Complaint specifically characterizes McCaul as a non-employee. (Doc. 42 at 6, 19). These provisions of the Montana Code do not apply to McCaul's claim.

McCaul fails to identify—in his First Amended Complaint or in his response to the motion to dismiss—any other Montana statute that provides a bank customer a retaliation claim. Even if some Montana statute reached McCaul's allegations, the First Amended Complaint fails to allege the substance or timing of any "protected disclosure" or facts linking such a disclosure to Opportunity Bank's conduct. McCaul has pleaded that he is a non-employee, so he cannot amend his complaint to allege otherwise. *Corinthian Colls.*, 655 F.3d at 995. Because no employment relationship exists between McCaul and Opportunity Bank, any amendment here would be futile. The Court dismisses McCaul's Fifth Claim for Relief with prejudice.

## V. Conclusion

Accordingly, IT IS HEREBY ORDERED that Defendants Opportunity Bank, Bert Bartle, and Jennifer Heber's Motion to Dismiss (Doc. 44) is **GRANTED**; McCaul's First Amended Complaint (Doc. 42) is **DISMISSED WITH PREJUDICE** in its entirety as to all Defendants, including Bert Bartle, Jennifer Heber, ABC Corporations 1-5, and Does 1-5; all other pending motions are **DENIED AS MOOT**. IT IS SO ORDERED.

The Clerk of Court is directed to enter judgment and close this matter.

DATED this 28th day of October, 2026.

Kathleen Lane
KATHLEEN S. LANE
United States District Judge